UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Wyatt Earp Harper, | ) C/A No. 9:15-1278-RBH-BM |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| Grover Drakeford; Caseworker Ms. Allen, *Classification Worker*; Caseworker Ms. Sanders, *Classification Worker*; Ms. Hough, *Grievance Coordinator*, | ) |
| Defendants. | ) |

The Plaintiff, Wyatt Earp Harper, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate at the Kershaw Correctional Institution (KCI), part of the South Carolina Department of Corrections (SCDC).

Under established local procedure in this judicial district, a careful review has been made of the pro se Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915 and § 1915A, the Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321 (1996), and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992), Neitzke v. Williams, 490 U.S. 319 (1989), Haines v. Kerner, 404 U.S. 519 (1972), Nasim v. Warden, Maryland House of Corr., 64 F.3d 951 (4th Cir. 1995), and Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983). Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a pro se complaint to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972); Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).



However, even when considered pursuant to this liberal standard, for the reasons set forth herein below this case is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) [outlining pleading requirements under the Federal Rules of Civil Procedure].

## Discussion

Plaintiff alleges that his constitutional rights were violated because he was not hired for a Prison Industries job. He asserts that the Defendants are discriminatory and biased because they allow certain inmates to decide who is hired based on who those inmates like. Plaintiff also appears to claim that another inmate, who had a disciplinary charge and had not finished a required one-year disciplinary free period, was hired instead of Plaintiff, and that some inmates pay off other inmates in order to be hired. Complaint, ECF No. 1 at 3-5. He requests monetary damages, that Defendants be informed of Plaintiff's rights, and that the Defendant Drakeford be told he is violating Plaintiff's rights. Id. at 6.

## Exhaustion of Administrative Remedies

Before a prisoner can proceed with a lawsuit in federal court concerning prison conditions, he must first exhaust his administrative remedies as required by the Prison Litigation Reform Act, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they

2

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740–41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review, which means "'using all steps that the agency holds out, and doing so properly.'" Woodford v. Ngo, 548 U.S. 81 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). Further, while a plaintiff's failure to exhaust administrative remedies is considered an affirmative defense, and not a jurisdictional infirmity; id. at 216; if the lack of exhaustion is apparent on the face of the prisoner's complaint, sua sponte dismissal prior to service of the complaint is appropriate. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Here, a plain reading of the Complaint shows that Plaintiff did not properly exhaust his available administrative remedies before filing this lawsuit. Although Plaintiff checked a box on the Complaint form indicating he received a final determination regarding the matters alleged, he also wrote that he filed a grievance, but that it was not processed because "she[1] said you can[']t grieve job assignment." ECF No. 1 at 2. Plaintiff has provided copies of requests to staff members, and a Step 1 grievance that was returned to him because he impermissibly submitted an attachment with it, with instructions to resubmit the grievance. ECF No. 1-1 at 1, 5, 8. There is no indication

---

[1]"She" may be the Defendant Hough, the inmate grievance coordinator, although that is not clear in the pleadings.



that Plaintiff resubmitted his Step 1 grievance or appealed any grievance (by filing a Step 2 grievance) that allegedly was not processed. Only after completing both Steps 1 and 2 of the SCDC grievance policy has an inmate properly exhausted his claims under § 1983. See Malik v. Ward, No. 8:08-1886-RBH-BHH, 2010 WL 1010023, at *6 (D.S.C. Feb. 4, 2010).

Further, although Plaintiff alleges in the Complaint that his grievance was returned to him unprocessed, that does not excuse his failure to complete the administrative appeal process before filing this lawsuit. See generally, Jordan v. Miami-Dade County, 439 F.Supp.2d 1237, 1241-1242 (S.D.Fla. 2006)[Remedies not exhausted where inmate did not appeal denial]; cf. Sullivan v. Coleman, No. 06-1588, 2006 WL 3759757, * 6 (D.S.C. Dec. 18, 2006)[Finding that inmate abandoned grievance where he failed to properly complete and return Step 2 Inmate Grievance Form]; Nally v. King, No. 12-128, 2013 WL 594709, at * 3 (N.D.W.Va. Jan. 3, 2013) ["Failure to receive a response is not an excuse for not moving to the next level of the grievance procedure"]; adopted by 2013 WL 593448 (N.D.W.Va. Feb. 15, 2013); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility]; Williams v. Reynolds, No. 12-138, 2013 WL 4522574 at * 4 (D.S.C. Aug. 27, 2013) ["Nevertheless, even if Plaintiff did file a Step 1 grievance that was returned unprocessed, there is no evidence that Plaintiff filed a Step 2 grievance or otherwise appealed the decision not to process the Step 1 grievance."].

Therefore, this case is subject to summary dismissal for failure of the Plaintiff to exhaust his administrative remedies. Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (S.C. 1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"]; Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)["It is beyond the power of this court -

4

or any other to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."](quoting Beeson v. Fishkill Corr. Facility, 28 F.Supp. 2d 884, 894-895 (S.D.N.Y. 1998)); Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies]; Malik v. Sligh, No. 11-1064, 2012 WL 3834850, at * 4 (D.S.C. Sept. 4, 2012)  ["A court may not consider, and must dismiss, unexhausted claims"].

### Job Claims

Additionally, even if Plaintiff had shown that he exhausted his available administrative remedies prior to filing this action, this Complaint would still be subject to dismissal. With respect to Plaintiff's allegation that he was discriminated against because he was not selected for a prison industries job, a prisoner has no constitutional right to participate in prison programs, so his ineligibility or the failure to hire him for a prison work job is not in and of itself a deprivation of constitutional magnitude. See Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009 (1978)[custody classifications and work assignments are generally within the discretion of the prison administrator]; Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980)["An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the due process clause."]; Alley v. Angelone, 962 F. Supp. 827, 834 (E.D.Va. 1997)[prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range of confinement which could be expected by most inmates].

Further, while Plaintiff alleges that Defendants' actions violated the "laws" that govern prison industry jobs, he has not specified what laws were broken. If Plaintiff means that an SCDC policy or procedure was violated, even if the Court were to assume that the Defendants'

5

actions violated prison policies, any violation of such policies does not constitute a violation of Plaintiff's constitutional rights, and is therefore not assertable in a § 1983 action. See Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992); cf. Johnson v. S.C. Dep't of Corrs., No. 06–2062, 2007 WL 904826, at *12 (D.S.C. Mar. 21, 2007)[The plaintiff's allegation that defendants did not "follow their own policies or procedures, standing alone, does not amount to a constitutional violation."](citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)[if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

Plaintiff may, however, set forth a viable claim concerning prison jobs if his inmate job assignment was based on certain unlawful criteria, such as his race. See Bentley v. Beck, 625 F.2d 70, 71 (5th Cir. 1980) [prisoner's constitutional rights violated where prisoner was denied a job assignment in the prison kitchen because of race]. "Racial discrimination in prisoner job assignments states a violation of the equal protection clause of the fourteenth amendment and of the due process clause of the fifth amendment." Hollingsworth v. Wagoner, 919 F.2d 139, 1990 WL 187125, *1 (4th Cir. Nov. 30, 1990)(unpublished) (citing Davis v. Passman, 442 U.S. 228 (1979)). However, to state a claim for an equal protection violation in a prison setting, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). To meet this requirement, plaintiff is required to set forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003).



6

Here, Plaintiff fails to assert that any discrimination he experienced was based on any protected factor such as race. Instead, he alleges that there was general favoritism of certain inmates over others in job assignments, and that another inmate with a disciplinary conviction was hired prior to him because the inmate had previous Prison Industries experience. Further, Plaintiff fails to allege that he was treated differently from others that were similarly situated and that the unequal treatment was the result of discrimination.[2]

Therefore, this claim would be subject to dismissal even if Plaintiff had exhausted his administrative remedies.

### Claims Concerning the Grievance Process

Plaintiff also may be attempting to allege that his rights were violated because his grievance was not properly processed. Specifically, he contends that his grievance was not processed based on a policy that an inmate may not grieve a prison job assignment, but argues that this policy only applies to institutional jobs, and not to Prison Industries (or "outside") jobs.

Plaintiff fails to state a claim concerning the processing of his grievance, as it is well-settled that prison inmates have no federal constitutional right to have any inmate grievance system in operation at the place where they are incarcerated. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); see also Smith v. Ray, 36 F. App'x 99 (4th Cir. 2002) ("[A]ccess to the grievance

---

[2]Although Plaintiff did not include any such assertion in his Complaint, in a "statement" attached to his Complaint dated March 13, 2015, Plaintiff does allege that he was given a job on March 4, 2015, that this job was harder than the jobs given to other inmates who were over the age of 55 (he states he is 58 years old), and that Defendant Drakeford gave him the hardest job possible because Plaintiff spoke out about corruption. ECF No. 1-1 at 7. However, as previously noted there is no indication that Plaintiff, who signed his Complaint on December 9, 2014 (it was not filed until March 19, 2015), exhausted his administrative remedies as to any such claim. Additionally, Plaintiff's assertion is that he was discriminated against because he allegedly spoke out about corruption, not because of any unlawful criteria giving rise to a constitutional claim.



procedure is not a constitutionally protected right[.]"); <u>Oliver v. Myers</u>, No. 7:08–CV–558, 2008 WL 5212409, at *4 (W.D.Va. Dec. 12, 2008) [stating that "because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts"], appeal dismissed, 335 F. App'x 317 (4th Cir. 2009). Simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer a substantive constitutional right on prison inmates. <u>See</u> <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988).

Hence, even if corrections officials fail to properly apply an inmate grievance procedure, such failure is not actionable under § 1983. <u>See</u> <u>Spencer v. Moore</u>, 638 F. Supp. 315, 316 (E.D.Mo. 1986).

### Eleventh Amendment Immunity

Additionally, Defendants Allen, Sanders, and Hough are all employees of SCDC and, as employees of the State of South Carolina, they are entitled to Eleventh Amendment immunity in their official capacities as to any claims against them for monetary damages.[3] The Eleventh Amendment to the United States Constitution divests this Court of jurisdiction to entertain a suit for damages brought against the State of South Carolina, its integral parts, or its officials in their official capacities, by a citizen of South Carolina or a citizen of another state. <u>See</u> <u>Alden v. Maine</u>, 527 U.S. 706 (1999); <u>College Savs. Bank v. Florida Prepaid Educ. Expense Bd.</u>, 527 U.S. 666 (1999); <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44 (1996)(reaffirming <u>Hans v. Louisiana</u>, 134 U.S. 1, 10 (1890) [holding that a citizen could not sue a state in federal court without the state's consent];

---

[3]Defendant Drakeford is identified as a "plant manager", whose employer is unclear. However, if Drakeford is an employee of the State of South Carolina, he is also entitled to Eleventh Amendment immunity in his official capacity.



<u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89 (1984)[although express language of Eleventh Amendment only forbids suits by citizens of other States against a State, Eleventh Amendment bars suits against a State filed by its own citizens]; <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978); <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 61-71 (1989); <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974)[stating that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its [Eleventh Amendment] sovereign immunity from suit even though individual officials are nominal defendants"](quoting <u>Ford Motor Co. v. Dep't. of Treasury</u>, 323 U.S. 459, 464 (1945)); <u>see also</u> <u>Harter v. Vernon</u>, 101 F.3d 334, 338-39 (4th Cir. 1996); <u>Bellamy v. Borders</u>, 727 F. Supp. 247, 248-50 (D.S.C. 1989); <u>Coffin v. South Carolina Dep't of Social Servs.</u>, 562 F. Supp. 579, 583-85 (D.S.C. 1983); <u>Belcher v. South Carolina Bd. of Corrs.</u>, 460 F. Supp. 805, 808-09 (D.S.C. 1978).

  While the United States Congress can override Eleventh Amendment immunity through legislation, Congress has not overridden the states' Eleventh Amendment immunity in § 1983 cases. See <u>Quern v. Jordan</u>, 440 U.S. 332, 343 (1979). Further, although a State may consent to a suit in a federal district court, <u>Pennhurst</u>, 465 U.S. at 99 & n.9, the State of South Carolina has not consented to such actions. Rather, the South Carolina Tort Claims Act expressly provides that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another state. S.C. Code Ann. § 15-78-20(e).

  Therefore, these Defendants are entitled to immunity in their official capacity from Plaintiff's claims for monetary damages.



## State Law Claims

Finally, to the extent Plaintiff has alleged any claims under state law, federal courts are allowed to hear and decide state-law claims only in conjunction with federal-law claims, through the exercise of "supplemental jurisdiction." See 28 U.S.C. §1367; Wisconsin Dep't of Corrs. v. Schacht, 524 U.S. 381, 387 (1998). Since Plaintiff has asserted no valid federal claim, this Court cannot exercise "supplemental" jurisdiction over Plaintiff's state law claims, if any. See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ["[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants"].

While a civil action for a state law claim would be cognizable in this Court on its own under the federal diversity statute, that statute requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00). See 28 U.S.C. § 1332(a). Complete diversity of parties in a case means that no party on one side may be a citizen of the same State as any party on the other side. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 372-374 (1978). Here, Plaintiff's Complaint and proposed service documents indicate that all parties to this action are residents of South Carolina, so diversity of citizenship does not exist. See ECF No. 1 at 2; ECF No. 11.

Accordingly, this Court has no diversity jurisdiction over any state law claims being asserted.

## Recommendation

Based on the foregoing, it is recommended that the Court dismiss Plaintiff's Complaint without prejudice and without issuance and service of process.



Plaintiff's attention is directed to the important notice on the next page.

_____
Bristow Marchant
United States Magistrate Judge

September 10, 2015
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

P12